A01A1507, A01A1890. RUSSELL MORGAN LANDSCAPE
MANAGEMENT et al. v. VELEZ-OCHOA; and vice versa.

(556 SE2d 827)

BLACKBURN, Chief Judge.

On July 31, 1996, Gilberto Velez-Ochoa was injured in a work-related collision between a Caterpillar tractor and the truck he was loading. His employer, Russell Morgan Landscape Management, paid Velez-Ochoa workers' compensation benefits through August 11, 1997, when it suspended payments. Velez-Ochoa filed a claim with the State Board of Workers' Compensation ("Board") for improper suspension of his temporary total disability benefits. An administrative law judge ("ALJ") held an evidentiary hearing to consider the claim on January 8, 1999. The ALJ concluded that Morgan Landscape had established that, as of the benefit suspension date, Velez-Ochoa had undergone a change in condition for the better and was able to return to work without restriction and denied Velez-Ochoa's claim for temporary total disability benefits after August 11, 1997. The ALJ also found that Morgan Landscape had failed to comply with the technical requirements of the Workers' Compensation Act and Board Rules for suspension of benefits and ordered it to pay an additional ten days of benefits, $1,100 in attorney fees, and a civil penalty of $1,000.

Velez-Ochoa appealed the ALJ's ruling to the appellate division of the Board. The appellate division accepted the ALJ's findings of fact but overturned the ALJ's conclusions of law with regard to the termination of Velez-Ochoa's benefits. The appellate division ordered Morgan Landscape to pay Velez-Ochoa temporary total disability benefits through January 8, 1999, the date of the hearing before the ALJ. Morgan Landscape appealed the order of the appellate division to the superior court, which declined to issue an order within 20 days of hearing the matter, causing the order of the appellate division to be confirmed by operation of law. OCGA § 34-9-105 (b).

Pursuant to our grant of their application for discretionary appeal, in Case No. A01A1507 Morgan Landscape appeals the trial court's affirmance of the appellate division's order. In Case No. A01A1890, Velez-Ochoa appeals the trial court's denial of his motion to dismiss Morgan Landscape's appeal. For reasons set forth below, we affirm in both cases.

### Case No. A01A1890

Morgan Landscape filed a notice of appeal in this matter with the trial court on October 23, 2000. The notice of appeal stated that the "transcript of evidence and proceedings will be filed for inclusion in the record on this Appeal." There was, however, no transcript

available of the superior court hearing. As of March 5, 2001, the record had not been forwarded to this court by the superior court clerk, which was waiting for the nonexistent transcript, and Velez-Ochoa asked the trial court to dismiss Morgan Landscape's appeal for inexcusable delay. The trial court denied Velez-Ochoa's motion to dismiss on March 22, 2001.

"[T]rial courts have very broad discretion when deciding whether to dismiss an appeal for delay." *Crown Diamond Co. v. N. Y. Diamond Corp.*[1] Velez-Ochoa refers us to decisions in which the appellant had caused an inexcusable delay by asking the superior court clerk to include a nonexistent transcript in the record to be transmitted to this court. See *Johnston v. Ga. Public Svc. Comm.*;[2] *Lindstrom v. Forsyth County.*[3] But these cases involve the trial court's dismissal of an appeal. The question presented here is whether, despite the trial court's broad discretion, it was abuse of that discretion to deny the motion to dismiss the appeal. In reaching a decision whether a delay in filing a transcript justifies dismissal of the appeal, the trial court should consider if the delay was unreasonable and inexcusable. OCGA § 5-6-48 (c); *In the Interest of D. M. C.*[4] A transcript of the workers' compensation hearing was part of this record and could afford a basis for finding an excusable misunderstanding between the clerk of the superior court and counsel for Morgan Landscape. The record also shows that Morgan Landscape's counsel was diligent in keeping track of the appeal's status and was under the misconception that the delay in filing with this court was due to a normal administrative backlog. There is some evidence to support a finding of an excusable delay or a reasonable delay in the filing of this appeal. Accordingly, we find no abuse in the exercise of the trial court's discretion, and we affirm the denial of Velez-Ochoa's motion to dismiss.

## Case No. A01A1507

The findings of fact of the ALJ, as accepted by the appellate division, are not in dispute. The controversy is whether the employer was entitled to suspend benefit payments as of (1) August 11, 1997, the date it filed the notice of suspension of benefits, or (2) January 8, 1999, the date of the evidentiary hearing. Morgan Landscape argues that *Sadie G. Mays Mem. Nursing Home v. Freeman*[5] is the control-

---

[1] *Crown Diamond Co. v. N. Y. Diamond Corp.*, 242 Ga. App. 674, 676 (1) (530 SE2d 800) (2000).

[2] *Johnston v. Ga. Public Svc. Comm.*, 209 Ga. App. 224 (433 SE2d 65) (1993).

[3] *Lindstrom v. Forsyth County*, 221 Ga. App. 581 (472 SE2d 106) (1996).

[4] *In the Interest of D. M. C.*, 232 Ga. App. 466, 468 (2) (b) (501 SE2d 305) (1998).

[5] *Sadie G. Mays Mem. Nursing Home v. Freeman*, 163 Ga. App. 557 (295 SE2d 340) (1982).

ling authority and that *Freeman* required that the appellate division affirm the ALJ's suspension of Velez-Ochoa's benefit payments as of August 11, 1997. We find that *Freeman* is distinguishable.

In *Freeman*, the employer's notice of suspension of benefits (which is required to be made through a "Form WC-2") indicated that the employer had suspended the employee's benefits because the employee had returned to work, although the employee had not returned to work. The Board concluded that the employee was entitled to benefits until the employer properly terminated them. We disagreed with the Board and held that the employer was entitled to establish a change of condition by showing that the employee was able to return to work regardless of whether the employee had returned in fact. But, most importantly to the question here, we also wrote:

> Nor are the appellants precluded from asserting a change in condition due to the fact that the WC 2 listed the reason for termination as being "return back to work" when appellee had, in fact, not returned to work. *The WC 2 contained language sufficient to place the board and appellee on notice of termination of benefits due to change in condition*, and, as previously noted, actual return to work by the employee is not a prerequisite for termination of benefits due to a change in condition.

(Emphasis supplied.) Id. at 560 (3).

In comparison to *Freeman*, the Form WC-2 Morgan Landscape gave to Velez-Ochoa and the Board (1) listed the reason for suspension of benefits as "non-compliance with medical treatment," although the ALJ found that there was no such noncompliance; (2) failed to contain the information on the reverse side of the standard Form WC-2 explaining the procedure for challenging a suspension of benefits; (3) had no supporting medical reports attached, which are required under Board Rule 221 (i) (4) to suspend benefits for release to return to work without restriction; and (4) failed to give ten days advance notice of suspension of benefits as required by Board Rule 221 (i) (1). See *Atlanta Janitorial Svc. v. Jackson*.[6] Morgan Landscape would prefer to characterize its neglect to inform Velez-Ochoa that his benefits were being terminated for release to return to work without condition, and its failure to comply with Board Rules in preparing the Form WC-2, as technical violations caused by clerical error, and that these technical violations should not prohibit the suspension of Velez-Ochoa's benefits on the notice date so long as a change

---

[6] *Atlanta Janitorial Svc. v. Jackson*, 182 Ga. App. 155, 159 (4) (355 SE2d 93) (1987).

in condition could be shown. We disagree because Morgan Landscape failed to comply with provisions of the Workers' Compensation Act and Board Rules designed to afford due process to the injured worker, see *Cryder v. Oxendine*,[7] and, unlike *Freeman*, the mistake in listing the reason for suspension does not put the employee on fair notice of the employer's actual grounds for suspension. "We act evenhandedly when we apply the Act as it is written. Just as the claimant must meet the statute's requirements in order to qualify for benefits, so must the employer adhere to the procedural requirements in order to controvert the claim." *Cartersville Ready Mix Co. v. Hamby*.[8]

The appellate division's ruling is an even-handed application of the law. Morgan Landscape chose not to take advantage of Board Rules which would have allowed it to effectively suspend Velez-Ochoa's benefits before an evidentiary hearing by filing a conforming Form WC-2. When the parties appeared before the ALJ, Morgan Landscape presented evidence establishing that a change in condition had occurred due to the employee's ability to return to work, but did not establish noncompliance with medical treatment, the reason for suspension of benefits listed in the Form WC-2 which was actually filed. The appellate division set the benefit suspension date as of this hearing date, at which time the employee could be fairly said to be on notice of the reasons for the suspension of benefits and to have had an opportunity to present his case. We find no error.

*Judgments affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 21, 2001.

*Swift, Currie, McGhee & Hiers, Mark J. Goodman, Robert S. Huestis, Megan W. Grout*, for appellants.
*Clements & Sweet, John F. Sweet*, for appellee.

---

[7] *Cryder v. Oxendine*, 24 F3d 175, 177-178 (11th Cir. 1994).
[8] *Cartersville Ready Mix Co. v. Hamby*, 224 Ga. App. 116, 119 (2) (479 SE2d 767) (1996).