A02A1359. COKER v. DEEP SOUTH SURPLUS OF GEORGIA, INC.

(574 SE2d 815)

JOHNSON, Presiding Judge.

Nicholas Coker, an employee of Mayo Company, Inc., was using a hydraulic shearing machine to cut metal sheets when fingers on both of his hands were cut off. Coker sued, among others, Deep South Surplus of Georgia, Inc., alleging that it had negligently conducted safety inspections of Mayo's premises prior to the incident. Deep South moved for summary judgment on the ground that it had inspected the premises solely as part of Mayo's workers' compensation program and therefore it is immune from the lawsuit under OCGA § 34-9-11 of the Workers' Compensation Act. The trial court granted the motion. Coker appeals, claiming that Deep South is not entitled to immunity. We agree with Coker that Deep South is a third party that is not immune from the action, and we therefore reverse the judgment of the trial court.

OCGA § 34-9-11 (a) establishes that the rights and remedies granted to an employee by this chapter shall exclude all other rights and remedies at common law or otherwise on account of the employee's injury, *"provided, however, that no employee shall be deprived of any right to bring an action against any third-party tort-feasor, other than an employee of the same employer or any person who, pursuant to a contract or agreement with an employer, provides workers' compensation benefits to an injured employee."*[1] OCGA § 34-9-1 (3), which defines the term "employer," provides: "If the employer is insured, this term shall include his insurer as far as applicable." In

---

[1] (Emphasis supplied.)

other words, the workers' compensation insurer is considered to be the alter ego of the actual employer for purposes of immunity, and an employee who is eligible for workers' compensation may not otherwise recover against his employer or the employer's alter ego.[2]

In the instant case, American National Insurance Company was the workers' compensation carrier for Coker's employer, Mayo. Deep South was not Mayo's workers' compensation carrier and had no contract with Mayo to provide workers' compensation benefits to injured employees. Rather, Deep South was hired by American National to conduct safety inspections of Mayo's premises.

Because the Workers' Compensation Act is in derogation of common law, its provisions must be strictly construed.[3] Strictly construing the above-emphasized immunity provision of OCGA § 34-9-11 (a), in order for Deep South to be immune from suit, it must have had a contract or agreement with the employer, Mayo, to provide workers' compensation benefits to an injured employee. Since there is no such contract, Deep South is not Mayo's alter ego and is not immune from suit. Instead, Deep South is a third party, and under the strict construction of the statute, Coker shall not be deprived of his right to bring an action against such a third party.

Deep South cites the cases of *Mull v. Aetna Cas. &c. Co.*,[4] *Fred S. James & Co. of Ga. v. King*,[5] and *Hinkley v. Bldg. Material Merchants Assn. of Ga.*[6] for the proposition that a service agency which performs safety inspections is entitled to the same tort immunity as the employer and the workers' compensation carrier. Those cases, however, are factually different from the instant case and do not provide a basis for extending immunity to a third party such as Deep South.

The *Mull* case was decided under a version of the Georgia Code that did not contain the immunity clause now contained in OCGA § 34-9-11 (a). When *Mull* was decided in 1969, it relied in part on Code § 114-103, the predecessor to OCGA § 34-9-11. At that time, Code § 114-103 set forth only the exclusive remedy provision now found in OCGA § 34-9-11 (a), but it did not contain the current Code's immunity provision. Because the strict construction of that statutory immunity provision is the dispositive issue in the instant case, the *Mull* opinion does not control this case.

In *Fred S. James & Co.*, the employer was self-insured and entered into a service agreement with Fred S. James & Company, an

---

[2] *Drury v. VPS Case Mgmt. Svcs.*, 200 Ga. App. 540 (408 SE2d 809) (1991).

[3] *MacKenzie v. Sav-A-Lot Food Store*, 226 Ga. App. 32, 33 (1) (485 SE2d 559) (1997).

[4] 120 Ga. App. 791 (172 SE2d 147) (1969).

[5] 160 Ga. App. 697 (288 SE2d 52) (1981).

[6] 187 Ga. App. 345, 346 (370 SE2d 201) (1988).

insurance broker, to administer its workers' compensation program.[7] Under those circumstances, this court held that there is no logical reason why such an agency, which by contract administers and facilitates the payment of benefits by the self-insured employer, should not be included under the umbrella of immunity provided by the Workers' Compensation Act.[8]

Likewise, in *Hinkley* the employer was self-insured, and it was not factually disputed that Building Material Merchants was the service agency administering the self-insured employer's workers' compensation program.[9] On that premise, this court relied on the holding in *Fred S. James* to find that Building Material Merchants was immune from suit.[10]

Unlike the employers in *Fred S. James* and *Hinkley*, the employer in the instant case, Mayo, is not self-insured. Moreover, while Deep South may be a service agency that inspected Mayo's property, it had no contract of any sort with Mayo. Deep South had no contract with Mayo to conduct the safety inspections, and it certainly had no contract to administer Mayo's workers' compensation program or facilitate the payment of benefits. Consequently, rather than supporting Deep South's claim of immunity, the holdings in *Fred S. James* and *Hinkley* actually support the contrary conclusion that Deep South is a third party that does not fall under the umbrella of immunity provided by the Workers' Compensation Act.

Because Deep South is not entitled to immunity under the Act, the trial court erred in granting summary judgment in its favor. The judgment of the trial court is therefore reversed.

*Judgment reversed. Smith, P. J., Eldridge, Ellington, Mikell, JJ., and Pope, Senior Appellate Judge, concur. Blackburn, C. J., dissents.*

BLACKBURN, Chief Judge, dissenting.

Georgia common law makes it clear that any representative of an employer's workers' compensation insurance carrier making safety inspections on behalf of the carrier is considered an alter ego of the employer and is, therefore, immune to any tort action other than one seeking workers' compensation. *Mull v. Aetna Cas. &c. Co.*[11] Georgia statutory law, which, rather than being in derogation of this common law, has in essence codified and expanded it, extends this immunity broadly to "any person who, pursuant to a contract or agreement with an employer, provides workers' compensation bene-

---

[7] *Fred S. James*, supra at 697-698.
[8] Id. at 700.
[9] *Hinkley*, supra at 346.
[10] Id.
[11] *Mull v. Aetna Cas. &c. Co.*, 120 Ga. App. 791 (172 SE2d 147) (1969).

fits to an injured employee." OCGA § 34-9-11 (a). In this present action brought by an employee, Nicholas Coker, for injuries resulting from an allegedly negligent safety inspection, the defendant, Deep South Surplus of Georgia, Inc., has submitted uncontroverted evidence showing that it is an insurance service agency which, pursuant to an agreement with the workers' compensation insurance carrier of Coker's employer, Mayo Company, Inc., administered the employer's workers' compensation program and performed related safety inspections. As such, whether one applies the "any representative" standard of *Mull*, supra, or the "any person" standard of OCGA § 34-9-11 (a), Deep South must be considered the alter ego of the employer in this case, and it is entitled to immunity from Coker's action based on an allegedly negligent safety inspection. I must, therefore, respectfully dissent from the opinion of the majority.

To establish those rights and remedies listed under the Workers' Compensation Chapter of the Georgia Code as the exclusive rights and remedies of an employee against (1) his employer, (2) the employer's workers' compensation insurer, and (3) other persons who have certain contracts or agreements with the employer or insurance carrier, Georgia common law and statutory law have established the parameters of immunity from common law tort actions.

1. *Georgia Statutory Law*. Georgia statutory law explicitly provides that the rights and remedies granted to an employee under the Workers' Compensation Chapter of the Georgia Code shall be his exclusive means of reparation against his employer or his employer's insurance carrier,

> provided, however, that no employee shall be deprived of any right to bring an action against any third-party tortfeasor, other than an employee of the same employer or *any person who, pursuant to a contract or agreement with an employer, provides workers' compensation benefits to an injured employee*, notwithstanding the fact that no common-law master-servant relationship or contract of employment exists between the injured employee and the person providing the benefits.

(Emphasis supplied.) OCGA § 34-9-11 (a).

For purposes of analyzing this provision, it must be remembered that "[i]f the employer is insured, [the] term [employer] shall include his insurer as far as applicable." OCGA § 34-9-1 (3). Therefore, the following are granted explicit immunity under OCGA § 34-9-11 (a): (1) the employer; (2) employees of the employer; (3) any person who provides workers' compensation benefits pursuant to a contract or agreement with the employer; (4) the employer's insurance carrier;

(5) employees of the employer's insurance carrier; and (6) any person who provides workers' compensation benefits pursuant to a contract or agreement with the employer's insurance carrier.

In this case, there is uncontroverted evidence that Deep South had an agreement with the insurance carrier of Coker's employer to provide certain workers' compensation benefits, including administering the employer's workers' compensation program and conducting safety inspections. Therefore, OCGA § 34-9-11 (a) grants explicit immunity to Deep South as "any person" who provides workers' compensation benefits pursuant to a contract or agreement with the employer's insurance carrier.

The fact that the record contains no contract between Deep South and the insurance carrier, contrary to the majority opinion, does not change this result. OCGA § 34-9-11 (a) states clearly and unequivocally that the necessary relationship can be created by either a contract *or an agreement*. If the legislature had intended immunity to be extended only when a formal contract existed, it would not have included the term "agreement" in the immunity provision. The record before us establishes that Deep South had an agreement with the employer's insurance carrier. As such, Deep South was entitled to immunity.

2. *Common Law*. Even before immunity was established by statute, it was extended to those in Deep South's position by common law. For example, in *Mull*, supra, an employee's widow brought suit against a workers' compensation carrier and its agent for negligence in inspecting machinery. The trial court granted the defendant's motion to dismiss the case, and this Court affirmed, saying, "[u]nder the circumstances alleged the workmen's compensation carrier *and its representative in making such inspection* were the alter ego of the employer within the statutory definition equating the insurance carrier to the employer." (Emphasis supplied.) Id. In short, the immunity from liability extended, not only to the workers' compensation carrier, but also to its representative which made the safety inspection.

The majority contends that *Mull* cannot be considered in this case because the immunity that it extended had not yet been codified by OCGA § 34-9-11 (a), which the majority argues must be strictly construed here. While it is a general truism that this Court must strictly construe statutory provisions which are in derogation of common law, the statutory immunity here does not appear to be in derogation of common law. To the contrary, it appears to adopt the common law and expand it. As such, *Mull* must be considered in this case. It presents complementary common law which provides insight regarding the legislature's subsequent codification of the very kind of immunity established by *Mull*.

Moreover, as discussed more fully below, *Mull* was cited approv-

ingly by this Court in *Fred S. James & Co. of Ga. v. King*,[12] a case which was decided one year after immunity language had been codified in substantially the same language it exists today. See Ga. L. 1980, p. 1145, § 2. To that extent, to render the opinion it now wishes, the majority would have to both overrule *Mull* and criticize *James*, both of which issue opinions consistent with the present immunity statute.

In *James*, the defendant, Fred S. James & Company (James), was an insurance broker who entered into a service agreement with Cagle's, a self-insurer, to administer its workers' compensation program. Under the service agreement, James was responsible, among other things, for safety inspections. King, an employee of Cagle's, was injured and filed suit against James for its failure to inspect and warn of dangerous conditions.

James filed a motion for summary judgment, contending, as does Deep South, that it was entitled to the same immunity from liability as the employer. King contended "that only the workers' compensation insurance carrier is entitled to the same immunity as the employer and that James is not an *insurer*, but an independent contractor who provides a service to Cagle's." *James*, supra at 698.

Citing *Mull*, the *James* Court noted that "[i]t is well settled in Georgia that a workers' compensation insurer *and its representatives* are the alter ego of the employer and are entitled to the same immunity from liability as the employer under the Workers' Compensation Act." (Emphasis supplied.) *James*, supra at 699. The *James* Court went on to cite with approval *Allen v. Employers Svc. Corp.*[13]

> The *Allen* court held that anyone who stands in the shoes of an employer or who, in privy with the employer or his privies, undertakes to perform or assist in the performance of the statutory duties imposed on the employer by the Workmen's Compensation Act (e.g., inspecting and advising as to the safety of employees) should be immune from suit as a third party tortfeasor by an employee covered under the workmen's compensation program. The court reasoned that to permit a suit against a service organization providing inspection services would act as a deterrent to employers from using such services because the service company's fees would be greater if it were exposed to liability to injured employees.

*James*, supra at 700. The *James* Court found the reasoning of the

---

[12] *Fred S. James & Co. of Ga. v. King*, 160 Ga. App. 697 (288 SE2d 52) (1981).
[13] *Allen v. Employers Svc. Corp.*, 243 S2d 454 (Fla. App. 1971).

Florida Second District Court of Appeal convincing and held that the trial court had erred in denying James's motion for summary judgment. Specifically, the Court said:

> We see no logical reason why a service agency which is responsible for the administration of a self-insured employer's workers' compensation program should not be included under the umbrella of immunity provided by the Act. By contract the service agency administers and facilitates the payment of benefits by the self-insurer, and anyone who "undertakes to perform or assist in the performance" of an employer's statutory duties under the Workers' Compensation Act should be immune from suit as a third party tortfeasor.

Id. In so reasoning, this Court accepted James's contention that immunity extended not only to the workers' compensation insurance carrier, but also to the independent contractor who was providing safety inspection services under the Workers' Compensation Act, and rejected King's, and the majority's position, that only the workers' compensation carrier is entitled to immunity.

The majority attempts to distinguish *James* from the present case by arguing that its holding applies only to employers who are self-insured. Under the majority's view, immunity should be extended in these cases presumably because the employer directly supervises the representatives handling its workers' compensation program. This distinction is made irrelevant, however, by OCGA § 34-9-1 (3) which states, as discussed more fully above, that the term "employer" includes both the actual employer *and* its insurance carrier. Whether the employer is self-insured is irrelevant, as immunity is given to both employees of the employer and representatives of the employer's insurance carrier. Therefore, representatives of the insurance carrier who carry out the employer's workers' compensation program pursuant to an agreement are immune whether the employer directly supervises them or not.

Under both *Mull*, a case which did not involve an employer which was a self-insurer, and *James*, a case which did involve an employer which was a self-insurer, this Court has held that a representative of the workers' compensation carrier was entitled to immunity from common law tort liability where workers' compensation coverage applies. Deep South, as the representative of the workers' compensation carrier, stands in the shoes of Coker's employer and is, therefore, entitled to the same immunity from liability. Denying immunity to Deep South would, as the *Allen* and *James* Courts feared, "act as a deterrent to employers from using [safety inspec-

tion] services because the service company's fees would be greater if it were exposed to liability to injured employees." *James*, supra at 700.

For all the reasons given above, I believe that the trial court properly granted summary judgment to Deep South.

DECIDED NOVEMBER 13, 2002 —

RECONSIDERATION DENIED DECEMBER 6, 2002

*Orr & Edwards, W. Fred Orr II, James G. Edwards II*, for appellant.

*Downey & Cleveland, Russell B. Davis, Sean L. Hynes, Salter & Richards, Theodore Salter, Jr., Hawkins & Parnell, Michael J. Goldman*, for appellee.