A05A1274. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY v. BRIDGES.
(623 SE2d 1)

ANDREWS, Presiding Judge.

Pursuant to our grant of its application for discretionary appeal, Metropolitan Atlanta Rapid Transit Authority (MARTA) appeals from the superior court's order affirming the appellate division's

---

affirmance of administrative law judge (ALJ) Badcock-Hagler's ruling that MARTA had improperly reduced and then stopped the temporary total disability payments of employee Hoyle Bridges.

> In reviewing a workers' compensation award, both this court and the superior court must construe the evidence in the light most favorable to the party prevailing before the appellate division. It is axiomatic that the findings of the State Board of Workers' Compensation, when supported by any evidence, are conclusive and binding, and that neither the superior court nor this court has any authority to substitute itself as a fact finding body in lieu of the Board.

(Footnote omitted.) *Mayor &c. of Savannah v. Stevens*, 261 Ga. App. 694, 695 (583 SE2d 553) (2003), rev'd on other ground, 278 Ga. 166 (598 SE2d 456) (2004).

So viewed, the facts are that Bridges, a long time employee of MARTA, aggravated preexisting problems in his right knee and back while lifting a coin box and stepping off a bus on October 24, 2001.[1] MARTA accepted the injuries as compensable and Bridges was first examined by Dr. Dawkins, who released Bridges for return to light duty work on November 9, 2001. A WC-104 to this effect was filed with the Board. On January 9, 2002, Dr. Bernot performed knee surgery on Bridges' right knee and released him to regular duty in April 2002. Pursuant to that release, MARTA filed a WC-2, with Dr. Bernot's release attached, asserting that Bridges had undergone a change in condition for the better and suspended Bridges' temporary total disability payments. Bridges requested a hearing, contending his condition had not changed for the better and seeking reinstatement of temporary total disability benefits as well as a change of authorized treating physician. A hearing was held before ALJ Conner on September 5, 2002, and an award was issued on November 1, 2002. In that award, which is res judicata in this case,[2] Judge Conner concluded that Bridges' condition had not changed for the better and he was entitled to temporary total disability benefits retroactive to April 5, 2002, when they originally ceased, continuing forward. The award also ordered a change in authorized treating physician to Dr. Kingloff "for [Bridges'] work-related injuries from this date forward." The

---

[1] " '[I]njury' and 'personal injury' shall include the aggravation of a preexisting condition by accident arising out of and in the course of employment, but only for so long as the aggravation of the preexisting condition continues to be the cause of the disability; the preexisting condition shall no longer meet this criteria when the aggravation ceases to be the cause of the disability." OCGA § 34-9-1 (4).

[2] *Ga. Pacific Corp. v. Wilson*, 225 Ga. App. 663, 664 (1) (484 SE2d 699) (1997).

award also found that Dr. Bernot had not treated Bridges' back problems, only his knee. MARTA acknowledges that, since November 1, 2002, Dr. Kingloff was Bridges' authorized treating physician. In addition, the award established that Bridges had been capable only of sedentary work since the 2001 accident.

On January 21, 2003, MARTA unilaterally reduced Bridges' income benefits under OCGA § 34-9-104 (a) (2) to temporary partial disability payments. This reduction was premised on the WC-104 which MARTA based on Dr. Bernot's conclusions about Bridges' condition in February 2002.

On July 21, 2003, MARTA suspended all income payments to Bridges based on its claim that aggravation of his condition by work had ceased. OCGA § 34-9-1 (4).

Bridges requested a hearing which was conducted by ALJ Badcock-Hagler in August 2003, on the issues of benefit reduction and suspension. In her ruling of December 10, 2003, Badcock-Hagler found that the reduction and suspension of benefits were improper and that Bridges was entitled to recommencement of temporary total disability payments. She also specifically found that

> the employer/self insurer has failed to prove compliance with the mandatory requirement [(OCGA § 34-9-104 (a) (2))] of filing a Form 104 [(Dr. Bernot)] with the Board. The Board's file does not contain a copy of a Form 104 [(Dr. Bernot)] and the employer/self insurer was not able to produce a copy bearing the Board's filing stamp.

This finding was affirmed by the appellate division and superior court.

1. MARTA's first three enumerations deal with the interpretation of OCGA § 34-9-104 (a) (2) and they are considered together.

That statute, titled "Modification of award or order contained in prior decision in event of change in condition" states that:

> (a) *"Change in condition" defined; benefits.*
> (1) As used in this Code section, the term *"change in condition"* means a change in the wage-earning capacity, physical condition, or status of an employee or other beneficiary covered by this chapter, *which change must have occurred after the date on which the wage-earning capacity, physical condition, or status of the employee or other beneficiary was last established by award or otherwise.*
> (2) When an injury is not catastrophic, as defined in subsection (g) of Code Section 34-9-200.1, and the employee is not working, the board shall determine that a change in

condition for the better has occurred and the employee shall be entitled to the payment of benefits for partial disability in accordance with Code Section 34-9-262 if it is determined that the employee has been capable of performing work with limitations or restrictions for 52 consecutive weeks. *Within 60 days of the employee's release to return to work with restrictions or limitations, the employee shall receive notice from the employer on a form provided by the board that will inform the employee that he or she has been released to work with limitations or restrictions, will include an explanation of the limitations or restrictions, and will inform the employee of the general terms of this Code section.* In no event shall an employee be eligible for more than 78 aggregate weeks of benefits for total disability while such employee is capable of performing work with limitations or restrictions. . . . *Whenever an employer seeks to convert an employee from benefits for total disability to benefits for partial disability as provided in this paragraph, such employer may convert the benefits unilaterally by filing a form indicating the reason for the conversion as prescribed by rule of the board.*

(Emphasis supplied.)

Also, Board Rule 104, in effect in 2003, required that, in order to unilaterally convert total temporary disability payments to partial temporary disability payments, the employer

shall file Form WC-2 and shall attach a copy of the *authorized treating physician's report* establishing that the employee has been released to return to work with restrictions or limitations, and must specify on Form WC-2 . . . that the employee has been medically determined to be capable of performing work with limitations or restrictions for at least 52 consecutive weeks, or 78 aggregate weeks, *and that Form WC-104 with an attached medical report, was sent to the employee no later than 60 days after the date that the employee was determined able to return to work with restrictions or limitations. The Form WC-2 and Form WC-104 with attachments shall be sent to the employee and to the employee's attorney at the same time these forms are filed with the Board.*

(Emphasis supplied.)

"Because the Workers' Compensation Act is in derogation of common law, its provisions must be strictly construed." (Footnote omitted.) *Coker v. Deep South Surplus &c.*, 258 Ga. App. 755, 756 (574 SE2d 815) (2002).

MARTA argues that each of the first three sentences of OCGA § 34-9-104 (a) (2) should be analyzed independently of the others and, engaging in a valiant effort at statutory construction, contends that there should have been a board-initiated benefit reduction following the August 2003 hearing; that only one WC-104 (the Dr. Dawkins one filed in 2001) need be filed in any one claim; and that Dr. Dawkins was the authorized treating physician at the time his WC-104 was issued.

First, we note that, pursuant to OCGA § 34-9-104 (a) (1), Bridges' condition was established by the Conner award of November 1, 2002, after Dr. Dawkins gave his medical opinion in 2001. *Aldrich v. City of Lumber City*, 273 Ga. 461, 464 (542 SE2d 102) (2001). In order to avail itself of the opportunity to unilaterally convert an employee from temporary total disability to temporary partial disability, MARTA was required to strictly comply with OCGA § 34-9-104 (a) (2). See *Russell Morgan Landscape Mgmt. v. Velez-Ochoa*, 252 Ga. App. 549, 552 (556 SE2d 827) (2001). This it has not done. Dr. Bernot's medical report was the basis upon which MARTA sought the original change in condition and this change was denied by the Conner award, which is res judicata absent a subsequent event, such as the filing of another WC-104. Dr. Bernot's report and the WC-104 based on it are not in the record before us and was not in the record before the Board.[3] Therefore, it cannot be considered in determining whether MARTA complied with the statutory requirements.

To the extent that MARTA attempts to rely on the Dawkins medical report and the earlier filed WC-104, it is unavailing because thereafter, Bridges underwent knee surgery by Dr. Bernot, which was clearly a change in his physical condition rendering him temporarily totally disabled under OCGA § 34-9-104 (a) (1). Following his return to light duty status by Dr. Bernot, there was no WC-104 filed by MARTA with the Board with a statement by Dr. Kingloff, the authorized treating physician pursuant to Conner's award, or Dr. Bernot that Bridges was able to return to light duty.

Despite MARTA's efforts to distinguish it, *City of Atlanta v. Sumlin*, 258 Ga. App. 643, 646 (574 SE2d 827) (2002), controls this

---

[3] MARTA's argument that Bridges "stipulated" that there was a Bernot WC-104 does not fulfill the requirements of the statute. Also, although a copy of the Bernot form was included in the superior court record for our review, that cannot supplement the trial record before the ALJ and Board because the superior court sat only as an appellate body. See *Fort Mountain Container Corp. v. Keith*, 275 Ga. 210, 211 (1) (564 SE2d 188) (2002).

issue and requires strict compliance by the employer with OCGA § 34-9-104 (a) (2) and Board Rule 104.

There, following his injury on December 4, 1997, Sumlin was placed on total temporary disability. His authorized treating physician released him to work with limitations on October 29, 1998. The same doctor then reaffirmed, on July 27, 2000, that Sumlin was able to work with the same limitations contained in her 1998 release. On August 14, 2000, the employer filed a WC-104 seeking to reduce his benefits with the State Board and served a copy on Sumlin. Attached to that WC-104 were both the 1998 initial doctor's release along with the 2000 reaffirmation. The ALJ found that the reaffirmation was insufficient to fulfill the requirements of Rule 104 for an attached medical report from the authorized physician. Therefore, the employer did not provide the required notice to Sumlin within 60 days of his release to return to work with restrictions in 1998 and, consequently, the employer had not complied with OCGA § 34-9-104 or Board Rule 104.

Even though it was shown that an aggregate of 78 weeks had expired, the employer's failure to give the required notice to Sumlin precluded taking advantage of this to reduce his benefits. "[P]ublic policy supports placing the burden of complying with the statute on the employer." *City of Atlanta v. Sumlin*, supra at 647 (3).

So too here, MARTA's failure to show compliance with the statutory requirements precludes its unilateral suspension of benefits.

2. In its fourth enumeration, MARTA argues evidentiary matters, including the validity of various doctors' opinions and the veracity of Bridges. The evaluation of evidence was for the ALJ and Board and will not be revisited by this Court. *Milliken & Co. v. Poythress*, 257 Ga. App. 586, 587 (571 SE2d 569) (2002).

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED SEPTEMBER 23, 2005 —
RECONSIDERATION DENIED NOVEMBER 4, 2005 — ▮▮▮▮▮

*Robert J. Routman*, for appellant.
*Marcus & Jones, Steven E. Marcus*, for appellee.