**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 1, 2018**

# In the Court of Appeals of Georgia

A18A0267. LINGO v. EARLY COUNTY GIN, INC.

ELLINGTON, Presiding Judge.

Earnest Lingo appeals from the order of the Superior Court of Early County which affirmed the decision of the Appellate Division of the State Board of Workers' Compensation denying benefits to Lingo based primarily on a positive drug screen. The appellate division found that Lingo's employer, Early County Gin, Inc. ("the Employer"), was entitled to a rebuttable presumption pursuant to OCGA § 34-9-17 (b) that Lingo's workplace injury was caused by his illegal marijuana use and that Lingo had failed to present evidence overcoming that presumption. Pursuant to a granted application for a discretionary appeal, Lingo contends that (1) the superior court erred in failing to consider whether the Employer met the statutory prerequisites for availing itself of the rebuttable presumption of OCGA § 34-9-17 (b); (2) the

superior court erred in finding a sufficient chain of custody for Lingo's urine sample; and (3) even if the rebuttable presumption applied, Lingo submitted sufficient evidence to rebut the presumption that his drug use caused the workplace accident. For the reasons that follow, we vacate the order of the superior court and remand to the appellate division.

> In reviewing a workers' compensation award, this Court must construe the evidence in the light most favorable to the party prevailing before the appellate division. The findings of the State Board of Workers' Compensation, when supported by any evidence, are conclusive and binding, and neither the superior court nor this Court may substitute itself as a factfinding body in lieu of the State Board.

(Footnotes omitted.) *Laurens County Bd. of Educ. v. Dewberry*, 296 Ga. App. 204, 206 (674 SE2d 73) (2009). However, "[w]e review questions of law in a workers' compensation appeal de novo upon a plain legal error standard of review." *Selective HR Solutions, Inc. v. Mulligan*, 305 Ga. App. 147, 148 (699 SE2d 119) (2010).

So viewed, the evidence shows that Lingo worked at a cotton gin company as a "module feeder." He directed drivers as they backed their large, heavily-laden module trucks into a loading dock area where he would then assist in unloading modules of unginned cotton onto a platform for ginning. On November 20, 2014,

2

Lingo and one other employee, Raul Flores, were on duty at the loading dock. Early that afternoon, as Lingo was sweeping up cotton from the module table near the gin, a truck began backing toward the loading dock. Because Lingo was facing the loading dock, he did not see the truck as it backed in. The truck struck Lingo from behind, crushing him against the loading dock. The truck that struck Lingo did not have a functional back-up beeper. The evidence is disputed as to whether Flores directed the truck driver to back into the loading area.

There is conflicting evidence regarding whether Lingo should have been able to hear the truck as it backed up, despite the absence of a warning beeper. The noise of the cotton gin machinery running nearby was sufficiently loud to preclude normal conversation. Lingo's employer offered him earplugs to protect his hearing, but Lingo was not wearing them at the time of the accident. Lingo presented evidence from an expert witness who took sound measurements at the loading dock and opined that "the sound of the module truck was not distinguishable from the background noise" of the cotton gin. Thus, the expert opined that, regardless of Lingo's level of alertness, he would not have been able to hear the truck backing up. The gin's general

manager, however, testified that the truck's air brakes were loud enough to be audible over the general din of the workplace.

Lingo was taken to a hospital in Dothan, Alabama for emergency surgery to address several injuries, including pelvic, chest, and rib fractures and damage to his stomach, spleen, and colon. The Employer requested a post-injury drug test from a lab technician that it had retained, and she went to the hospital to obtain a urine sample. Because Lingo was undergoing surgery, the technician was not permitted in the operating room. The technician told an operating room nurse that she needed a urine sample. Shortly after the request, the nurse returned with a urine sample, which the technician bagged, sealed, and labeled. The technician testified that she has no first-hand knowledge of who collected the sample or what protocols that person followed. The sample was taken to a drug testing company, and a subsequent analysis revealed the presence of cannabinoid metabolites.

One of Lingo's co-workers, Jaime Garza, testified that Lingo was a friend of his, that they smoked marijuana together daily, and that he and Lingo had been smoking marijuana on the premises throughout the morning of the accident. He claimed Lingo must have been really "messed up" not to hear the truck's beeper,

4

which he argued Lingo should have heard if he was not texting on his phone. He claimed that Lingo kept a "pouch" of marijuana on him. Lingo disputed the testimony, testifying that he only smoked marijuana when he was not working. The Employer's general manager testified that he had no evidence that the employees were intoxicated on the job or were smoking marijuana on the premises. None of the employees had failed any of the random drug screens conducted during 2014. The record shows that no marijuana or drug paraphernalia was recovered from the clothing that Lingo had been wearing on the day of the accident. The ALJ found that Garza's testimony had "significant discrepancies" and that Garza lacked credibility.

Lingo also presented an expert witness who criticized the lab's chemical analysis of Lingo's urine, noting that because the results were not "validity tested," he could make no judgment on whether the urine sample had been diluted or concentrated. He also noted that a urine sample is generally inadequate to evaluate the extent to which a person is under the influence of marijuana for the following reasons. When marijuana is smoked, it will be metabolized out of a person's "blood system from anywhere between half an hour and an hour and a half," depending on a number of factors, such as the person's height and weight. However, because

5

marijuana metabolites are "lipophilic" and can be stored in fat cells, it is possible that metabolites will continue to leach into the urine for days or even weeks after the drug was last smoked. The expert asserted that only a blood plasma test accurately reveals the extent to which marijuana is currently affecting cognition. Thus, the expert opined that the lab results neither validated nor discredited Lingo's account of his marijuana usage. Rather, he concluded that the urine test provided no "empirical data that [Lingo] was or was not impaired" at the time of the accident.

The Employer asserted it was not liable under OCGA § 34-9-17 (b) (2), which provides in relevant part that:

> If any amount of marijuana . . . is in the employee's blood within eight hours of the time of the alleged accident, as shown by chemical analysis of the employee's blood, urine, breath, or other bodily substance, there shall be a rebuttable presumption that the accident and injury or death were caused by the ingestion of marijuana[.]

The ALJ found that the Employer was unable to avail itself of this presumption because the Employer was unable to show who had obtained the sample as the lab technician did not observe the sample being taken and there was no testimony or other evidence establishing this initial link in the chain of custody. Absent the evidence of the urine sample, the ALJ found the Employer was otherwise unable to

6

carry its burden of proving that the accident was caused by Lingo's marijuana use and awarded him benefits.

The Employer appealed to the appellate division, which reversed. The appellate division relied upon chain of custody rulings from criminal cases, holding that any defect in the chain of custody went to the weight of the evidence rather than its admissibility. Because there was no real suggestion that the urine sample had been tampered with, the appellate division found it sufficiently reliable to permit the Employer to avail itself of the rebuttable presumption that Lingo's injuries were caused by his use of marijuana. The appellate division further found that Lingo failed to rebut the presumption of causation because the evidence was conflicting regarding whether he could have heard the truck backing up absent his drug use. Lingo appealed the appellate division's award to the superior court, which affirmed under the "any evidence" standard.

1. In his first two claims of error, Lingo contends that the Superior Court erred in affirming the appellate division's ruling that the Employer could rely on the rebuttable presumption of OCGA § 34-9-17 (b) because the Employer failed to satisfy the statutory prerequisites of OCGA § 34-9-415 (d) (5) governing the collection of

samples for employee drug screens. Further, the court erred in allowing the Employer to rely on criminal cases concerning proving the chain of custody of samples collected in a workers' compensation matter. For the following reasons, we agree.

In conducting our review, we are guided by the purpose of the Workers' Compensation Act, which is to "alleviate the suffering of injured workers and their families by providing immediate and certain financial assistance, regardless of whether the injury resulted from the fault of the employer, as long as the injury arose out of and in the course of employment." *Travelers Ins. Co. v. Southern Elec.*, 209 Ga. App. 718, 719 (1) (434 SE2d 507) (1993). The Supreme Court of Georgia has held "that a liberal construction must be given to effectuate the humane purposes for which the [Workers'] Compensation Act was enacted." (Citation omitted.) *Schwartz v. Greenbaum*, 236 Ga. 476, 477 (1) (224 SE2d 38) (1976).

OCGA § 34-9-17 sets forth grounds for denying a claimant workers' compensation benefits based upon the claimant's misconduct. Subsection (b) of this statute provides, inter alia, "[n]o compensation shall be allowed for an injury or death due to . . . being under the influence of marijuana[.]" As noted above, subsection (b) (2) provides for a rebuttable presumption that marijuana use caused a work injury if

8

any amount of marijuana is "in the employee's blood within eight hours of the time of the alleged accident, as shown by chemical analysis of the employee's blood, urine, breath, or other bodily substance[.]" With respect to the manner in which these chemical tests are to be performed, the Supreme Court of Georgia has explained:

> [A]s a matter of statutory construction, OCGA § 34-9-17 (b) (3) incorporates only the applicable drug testing procedures of OCGA § 34-9-415, and . . . [the a]pplicability of the rebuttable presumption is, therefore, dependent entirely upon compliance with the procedural requirements for testing established by OCGA § 34-9-415[.] . . . [I]f the drug test fails to comply with procedures of OCGA § 34-9-415, the employer will not be entitled to rely upon the rebuttable presumption authorized by OCGA § 34-9-17 (b) (3).

(Citations and punctuation omitted.) *Georgia Self-Insurers Guaranty Trust Fund v. Thomas*, 269 Ga. 560, 561 (501 SE2d 818) (1998). OCGA § 34-9-415 (d) provides, in relevant part:

> All specimen collection and testing under this Code section shall be performed in accordance with the following procedures: . . . (5) A specimen for a test may be taken or collected by any of the following persons: (A) A physician, a physician assistant, a registered professional nurse, a licensed practical nurse, a nurse practitioner, or a certified paramedic who is present at the scene of an accident for the purpose of rendering emergency medical service or treatment; (B) A qualified

9

person certified or employed by a laboratory certified by the National Institute on Drug Abuse, the College of American Pathologists, or the Georgia Department of Community Health; (C) A qualified person certified or employed by a collection company[.]

Here, the lab technician did not know who collected the specimen from Lingo. Nor is there evidence in the record that allows a fact-finder to deduce who collected the sample. Because the specimen was taken while Lingo was in an operating room, it is reasonable *to assume* it was taken by a nurse, but assumptions based on speculation are not evidence.[1] The person who actually drew the urine sample could

---

[1]     [When an inference] is founded on speculation, it is without evidentiary value. As we have held, no inference of fact may be drawn from a premise which is wholly uncertain. And, inferences must be based on probabilities rather than mere possibilities. Moreover, when a party relies on inferences to prove a point, not only must those inferences be factually based, they must tend in some proximate degree to establish the conclusion sought and render less probable all inconsistent conclusions.

(Citations and punctuation omitted.) *Ogletree v. Navistar Intl. Transp. Corp.*, 245 Ga. App. 1, 6-7 (1) (535 SE2d 545) (2000). If, for example, the Employer in this case had identified everyone in the operating room as qualified to draw the sample, then it would be reasonable to assume that the person who drew the sample was qualified. In this case, though, there is no evidence establishing who was in the operating room.

10

have been a nurse's assistant, an intern, or some other hospital employee who did not meet the statutory criteria. In this case, the Employer's failure to establish that a person authorized under the Code Section to collect the sample is fatal to the Employer's ability to rely upon the rebuttable presumption in OCGA § 34-9-17 (b) (2).[2] "Because the Workers' Compensation Act is in derogation of common law, its provisions must be strictly construed." (Citation and punctuation omitted.) *Metroplitan Atlanta Rapid Transit Auth. v. Bridges*, 276 Ga. App. 220, 224 (623 SE2d 1) (2005).

In this case, the superior court erred in applying chain of custody precedent from the criminal law instead of analyzing whether the collection method met the requirements of OCGA § 34-9-415 in determining whether to apply the rebuttable presumption. Lingo was not a criminal defendant. He was not being prosecuted for

---

[2] We also note that Lingo's expert witness gave uncontradicted testimony that the urine sample take from Lingo was inadequate to assess the extent to which Lingo had marijuana *in his blood* within eight hours of the accident, as required by OCGA § 34-9-17 (b) (2). In order to avail itself of the rebuttable presumption, the Employer must demonstrate that one may infer from the chemical test performed that marijuana or any other controlled substance was in the employee's *blood* during the requisite period. In this case, the Employer also failed to show that one could infer that marijuana was in Lingo's blood within eight hours of the accident based upon the results of the specific chemical test given. This, too, is fatal to the Employer's ability to rely upon the rebuttable presumption in OCGA § 34-9-17 (b) (2).

11

his marijuana use and his employer was not required to prove his "guilt" beyond a reasonable doubt. Lingo is a worker whose claim must be evaluated within the context of the Workers Compensation Act.

2. Lingo also contends the Superior Court erred in concluding that he had failed to adduce evidence sufficient to rebut the presumption that the accident was caused by his marijuana use. We decline to address this issue because neither we nor the superior court have had the benefit of the appellate division's analysis of the facts of this case without the application of the presumption. Consequently, we vacate the order of the superior court and remand to the appellate division for further proceedings so that it may consider whether the Employer satisfied its burden of proving that Lingo was impaired by marijuana use at the time of his accident and thus ineligible for benefits pursuant to OCGA § 34-9-17 (b).

*Judgment vacated and case remanded with direction. Senior Appellate Judge Herbert E. Phipps concurs. Bethel, J., concurs fully and specially.*

A18A0267.  LINGO v. EARLY COUNTY GIN, INC.

BETHEL, Judge, concurring fully and specially.

If Earnest Lingo was injured due to his being under the influence of marijuana, he is not eligible for compensation.  OCGA § 34-9-17 (b).

I agree with the majority that the Employer failed to satisfy the statutory testing protocols set forth in OCGA § 34-9-415 (d). I further agree that this failure on the part of the Employer deprived it of the rebuttable presumption that Lingo was impaired by his use of marijuana at the time of the accident in which he sustained his injuries. And I agree that this matter should be remanded for factual and legal consideration without reference to or reliance upon the statutory presumption.

I write separately to note that the failure to follow the collection procedure required to claim the rebuttable presumption does not result in the automatic exclusion of the evidence collected. Despite the failure to follow the statutory collection procedure, the evidence collected may be admitted and considered so long as it is otherwise admissible.

Despite concerns regarding the chain of custody and the reliability of the drug sample taken from Lingo expressed by the ALJ, the Employer should be permitted to introduce the results of the test as well as other evidence (including the testimony of Lingo's co-worker ) in regard to whether Lingo was impaired due to his use of marijuana at the time he was injured. As the Presiding Judge correctly notes, compliance with the testing protocols set forth in OCGA § 34-9-415 (d) is a prerequisite that must be established by the employer in order to give rise to the rebuttable presumption in OCGA § 34-9-17 (b). *See Thomas*, 269 Ga. at 561(the "[a]pplicability of the rebuttable presumption is, therefore, dependent entirely upon compliance with the procedural requirements for testing established by OCGA § 34-9-415"). But nothing in our case law suggests that compliance with the testing statute is a prerequisite for *admissibility* of the results of the test. As the appellate division ruled, reflecting upon standards utilized for the admission of evidence in

2

criminal cases, the fact that the test failed to comply with these requirements goes merely to the weight such evidence should be given in determining whether Lingo was impaired by the use of marijuana at the time of the accident not whether evidence of the test can be considered by the trier of fact at all.[1]

Although the Employer should not have the benefit of the statutory rebuttable presumption in this case, it should be permitted to introduce, and the fact finder should consider, the results of the drug testing performed on Lingo by the Employer. It is for the fact finder to determine the weight and credibility to be assigned to such test and the results thereof.

---

[1] *See, e.g., Nations v. State*, 345 Ga. App. 92, 99 (2) (b) (812 SE2d 346) (2018) ("When the State seeks to introduce into evidence an item that is subject to the chain of custody rule, it must establish with reasonable assurance that the item seized is the same as the item being offered into evidence. Nevertheless, the State is not required to foreclose every possibility of tampering; it need only show reasonable assurance of the identity of the evidence. . . . Also, this court has recognized that where, as here, there is no affirmative evidence of tampering or substitution, a missing link in the chain of custody does not alone require exclusion of the evidence. . . . Whatever doubt may have arisen from the alleged mishandling of evidence in this specific case could have been argued to, and considered by, the jury, and the jury is charged with deciding how much weight to give evidence. Where there is only a bare speculation of tampering it is proper to admit the evidence and let whatever doubt remains go to its weight." (citation omitted)).