A92A2057. LEGUM et al. v. CROUCH et al.
A92A2058. DESAI v. CROUCH et al.
A92A2059. GWINNETT COUNTY HOSPITAL AUTHORITY
v. CROUCH et al.
A92A2060. PARIKH v. CROUCH et al.
(430 SE2d 360)

BIRDSONG, Presiding Judge.

This is an interlocutory review of the order of the trial court denying various motions of appellant/defendants to dismiss the complaint, and motions for summary judgment, based upon appellee/plaintiffs' failure to comply with the affidavit requirements of OCGA § 9-11-9.1 (a).

On July 22, 1991, appellee Marie Crouch filed a complaint averring a wrongful death claim as the widow of the deceased husband and averring a medical malpractice claim as the administratrix of the deceased's estate. It was averred, inter alia, that the various appellant doctors were negligent in failing to timely diagnose deceased's lung cancer. Mr. Crouch died on March 6, 1991; on June 3, 1991, appellee was appointed as administratrix of Mr. Crouch's estate; until that time the estate was without representation. The claims against appellant Gwinnett Medical Center (hospital authority) provided adequate CPA notice solely as to claims of liability based upon the doctrine of respondeat superior for the averred medical negligence (malpractice) of two radiologists. No expert affidavit was filed contemporaneously with this complaint; however, in the complaint, it was averred that the claims were within ten days of the applicable statute of limitation and, accordingly, appellees attempted to invoke therein the 45-day filing delay provisions of OCGA § 9-11-9.1 (b). Appellants filed motions to dismiss and/or motions for summary judgment asserting noncompliance with the affidavit requirements of OCGA § 9-11-9.1 (a). Appellees filed an amended complaint within the 45-day delay period by filing an expert's affidavit with attached medical records. The trial court denied appellants' motions to dismiss and motions for summary judgment. *Held*:

1. Appellant hospital authority asserts that because the claims averred against it are based solely on its liability under the doctrine of respondeat superior for acts of malpractice committed by two doctors performing duties as radiologists, therefore medical affidavits were required to be filed in support of these claims pursuant to OCGA § 9-11-9.1, notwithstanding the hospital authority is not a professional within the meaning of said statute. OCGA § 9-11-9.1 (a)

pertinently provides that "[i]n any action for damages alleging professional malpractice, the plaintiff shall be required to file with the complaint an affidavit of an expert." In *Lamb v. Candler Gen. Hosp.*, 262 Ga. 70, 71 (1) (413 SE2d 720), it was held that where professional skill and judgment are not involved, an affidavit under OCGA § 9-11-9.1 is not necessary. In the case at bar it appears that all of the claims adequately averred against the hospital authority were grounded upon the authority's liability for the acts and omissions of its agents and employees under the doctrine of respondeat superior. Moreover, these acts or omissions, as averred in the complaint, required the exercise of some form of medical skill and judgment on the part of the two agents or employees concerned who were, at that time, medical doctors. (Additionally, no claim based on simple negligence, which per se would not require a supporting affidavit, has been averred in the complaint against any of the appellants.)

In *Gillis v. Goodgame*, 262 Ga. 117, 118 (414 SE2d 197), it was concluded that "the legislature intended for the term 'professional' as used in OCGA § 9-11-9.1 to be defined by OCGA §§ 14-7-2 (2); 14-10-2 (2), and 43-1-24. . . . [T]herefore . . . the affidavit requirements of § 9-11-9.1 apply only to those professions recognized under Georgia law in OCGA §§ 14-7-2 (2); 14-10-2 (2); and 43-1-24." This holding was further clarified in *Lamb*, supra at 72 (2), which recognized that *Gillis*, supra, held that the affidavit requirements of § 9-11-9.1 apply only to those professions recognized under Georgia law in OCGA §§ 14-7-2 (2); 14-10-2 (2); and 43-1-24.

Thereafter, the Supreme Court concluded in *Lamb*, supra at 72, "[i]nsofar as [appellant's] complaint alleges negligence against the hospital for supplying defective equipment for use in treating its patients, the case is not one against a 'professional' *or involving 'professional malpractice.'* Therefore, OCGA § 9-11-9.1 is inapplicable and no affidavit is required." (Emphasis supplied.) The essence of this holding appears to be that an appropriate affidavit is required not only when a particular claim is against a "professional" but also when a particular claim is grounded upon "professional malpractice," that is, an act or omission caused by a "professional" which constitutes malpractice. However, as the hospital authority is not classified as such a "professional," the affidavit requirement does not apply automatically as to any claim asserted against it. *Greene County Hosp. Auth. v. Turner*, 205 Ga. App. 213 (421 SE2d 715) and *Thornton v. Ware County Hosp. Auth.*, 205 Ga. App. 202 (421 SE2d 713). Rather, the affidavit requirement applies regarding tort claims filed against a hospital not only when averred liability is based upon the doctrine of respondeat superior but when it is further grounded upon the additional averment of acts or omissions requiring the exercise of professional skill and judgment by agents or employees who themselves are

recognized as "professionals" under OCGA §§ 14-7-2 (2); 14-10-2 (2); or 43-1-24. Compare *Thornton v. Ware County Hosp. Auth.*, supra, with *Greene County Hosp. Auth. v. Turner*, supra. See *Lamb*, supra at 72 (2).

Thus, to the extent that a complaint avers claims of hospital liability, based on the doctrine of respondeat superior, arising from acts or omissions constituting malpractice by doctors, registered professional nurses, or other "professionals," as recognized by said statutes, an appropriate affidavit, as defined in *Thornton*, supra, at 203, is required under OCGA § 9-11-9.1. *Greene County Hosp. Auth.*, supra. However, to the extent that a complaint avers claims based on the acts or omissions of agents or staff employees who are not "established" by the movant hospital as qualifying as professionals under *Gillis*, supra, no supporting affidavit would be required and those claims could not be dismissed or summary judgment granted for want of an affidavit. (Compare *Greene County Hosp. Auth.*, supra at 214.) As, in this case, the authority's liability under respondeat superior is based solely on averments of acts or omissions of medical malpractice by agents or employees thereof who are shown to be "professionals," as above defined, an appropriate medical affidavit was required to be filed, in accordance with OCGA § 9-11-9.1, in support of the claims against the authority. Compare *Dozier v. Clayton County Hosp. Auth.*, 206 Ga. App. 62 (424 SE2d 632). However, the question remains as to when the affidavit was required to be filed regarding the claims against appellants.

2. Pursuant to the provisions of OCGA § 9-3-71, the two-year statute of limitation for wrongful death cases emanating from medical malpractice, such as the wrongful death averments in this case, begins to run from the date of death, not from the negligent act or omission of the practitioner. See generally *Hart v. Eldridge*, 250 Ga. 526 (299 SE2d 560); *Clark v. Singer*, 250 Ga. 470 (298 SE2d 484). Thus, the statute of limitation as to all wrongful death claims averred in the complaint would not expire until March 6, 1993, and appellee could not invoke the 45-day grace period of OCGA § 9-11-9.1 (b) based on the averments of these claims on behalf of the deceased's widow. Accordingly, we must next examine whether the 45-day grace period nevertheless could be invoked as to this *case* based on the medical malpractice claims averred on behalf of the estate (see generally OCGA § 9-11-9.1 (b)).

3. Assuming without deciding that the statute of limitation applicable to every medical malpractice claim averred on behalf of the estate normally would have expired within ten days of the filing of the complaint, the question remains whether in the case at bar the statute of limitation was tolled by operation of law by OCGA § 9-3-92 for a period of 89 days, so that in legal effect the complaint was filed

more than ten days before the expiration of any applicable statute of limitation (OCGA § 9-3-73). If the statute of limitation was so tolled, appellees could not then avail themselves of the 45-day delay provision of OCGA § 9-11-9.1 (b).

OCGA § 9-3-92 pertinently provides that: "The time between the death of a person and the commencement of representation upon his estate . . . *shall* not be counted against his estate in calculating any limitation applicable to the bringing of an action, provided that such time shall not exceed five years." "This court has generally held that, unless the context clearly indicates otherwise, the word 'shall' is to be read as a word of command." *Dept. of Medical Assistance v. Llewellyn*, 197 Ga. App. 231 (1) (398 SE2d 256). The context of this statute is clear and unequivocal. By use of the word "shall," the legislature intended to provide and did provide that the tolling calculation therein provided was mandatory in every instance where the statute was applicable; that is, tolling occurs by operation of law to the extent provided by the statute. Any other conclusion would lead to the absurd result that estates could sporadically invoke the tolling provisions for their exclusive benefit and to the unnecessary detriment of opponents in litigation thereby resulting in different limitation periods applying under identical fact patterns. "In construing a legislative act, a court must first look to the literal meaning of the act. [Cit.] If[, as in this case,] the language is plain and does not lead to any absurd or impractical consequences, the court simply construes it according to its terms and conducts no further inquiry." *Diefenderfer v. Pierce*, 260 Ga. 426, 427 (396 SE2d 227). The terms of this statute are plain and reasonable in consequences, the tolling provision is triggered by operation of law and not by the unilateral act of the legal representative of an estate. Furthermore, statutes should be construed in pari materia with other statutes to which they relate and courts should strive to give meaningful effect to the purpose of these statutes. See *Ga. Marble Co. v. Whitlock*, 260 Ga. 350, 354 (1) (392 SE2d 881). It would thwart the legislative propose of OCGA § 9-11-9.1 (b) to construe OCGA § 9-3-92 in such a manner as to allow appellees a right to manipulate their entitlement to the otherwise strictly limited 45-day delay provisions of OCGA § 9-11-9.1 (b) by unilaterally declining to invoke the tolling benefits of OCGA § 9-3-92. Conversely, by interpreting OCGA § 9-3-92 in pari materia with OCGA § 9-11-9.1 (b), we find that it is both fundamentally fair and statutorily compatible to conclude that the tolling provisions of OCGA § 9-3-92 are triggered by operation of law.

Appellees, citing inter alia, the descriptive heading or catch line of OCGA § 9-3-92 and the case of *Lazenby v. Ware*, 178 Ga. 463 (173 SE 86), assert the tolling provision of OCGA § 9-3-92 is not triggered by operation of law, but can only be invoked on a case-by-case basis

and in benefit of the estate by its legal representative. The descriptive heading or catch line immediately preceding the text of a Code section does not constitute a part of such statute and is not controlling regarding the construction or interpretation thereof. OCGA § 1-1-7; compare *Brown v. Earp*, 261 Ga. 522 (407 SE2d 737); *Walker v. State*, 199 Ga. App. 701 (405 SE2d 887). Moreover, *Lazenby*, supra, and *State Farm &c. Co. v. Pace*, 176 Ga. App. 737 (337 SE2d 401) are distinguishable from this case and likewise are not controlling. *Lazenby*, supra at 463 (3), provides that the tolling provision of the statute does not apply in favor of heirs at law who elect to sue in their own right; the remaining language in Division 3 of *Lazenby* is dicta and merely establishes that such heirs at law cannot invoke the automatic tolling provisions of the statute in their own suits, albeit for purposes ostensibly beneficial to and in behalf of the estate, as it is only in suits legitimately prosecuted or defended in behalf of the estate by its legal representative that the *estate* can lay claim to a benefit flowing from this tolling provision. Likewise, *Pace*, supra at 738, merely holds that OCGA § 9-3-92 is inapplicable to appellees "as individuals suing as heirs at law" of an estate. Such is not the situation in this case. Neither *Lazenby* nor *Pace* prohibits appellants from gaining the benefit of the automatic tolling provision of OCGA § 9-3-92 in their defense of the suit brought against them by the estate. Statutes of limitation are not intended to operate solely for the benefit of the party in whose favor they have run, but are also for the public good (*Bank of Jonesboro v. Carnes*, 187 Ga. 795, 799 (2 SE2d 495)); this rationale is equally applicable to statute of limitation tolling provisions.

In view of the above, we conclude that appellants are correct in their claim that appellees were not entitled to invoke the 45-day delay provisions of OCGA § 9-11-9.1 (b), as the applicable statute of limitation would not expire as to any of appellees' averred claims, within ten days of the date of filing of the complaint. In view of this holding, we need not address appellants' remaining assertions in support of their enumerations of error.

4. Appellee Crouch refers in her brief to certain "constitutional issues" allegedly raised before the trial court, and asserts that "by this reference, these arguments and citations of authority are incorporated herein and hereby preserved." These matters currently are not before this court for adjudication; appellee elected not to file timely notice of cross-appeal, together with appropriate enumerations of error, as was necessary to raise these issues for appellate consideration during this interlocutory review. We express no advisory opinion (*Board of Trustees &c. v. Kenworthy*, 253 Ga. 554, 557 (322 SE2d 720)) whether these constitutional issues have been adequately raised and preserved before the trial court in the event of a future direct

appeal or cross-appeal thereto.

In view of the holdings in Divisions 1-3 above, we conclude the trial court erred in denying appellants' motions to dismiss (as converted by consideration of matters outside the pleadings to motions for summary judgment) and motions for summary judgment, as appellees were required to file the expert affidavit in accordance with OCGA § 9-11-9.1 (a) and could not utilize the 45-day delay provision of OCGA § 9-11-9.1 (b). Compare *Kalustian v. McDonald*, 194 Ga. App. 435 (390 SE2d 657); see *Foskey v. Foster*, 199 Ga. App. 205 (404 SE2d 303). Further, the authority cited by appellees, as to the various errors herein discussed, is not deemed to be controlling. Accordingly, judgments shall be reversed and the cases remanded to the trial court for appropriate disposition consistent with this opinion.

*Judgments reversed and remanded with direction. Beasley and Andrews, JJ., concur.*

DECIDED MARCH 8, 1993 —
RECONSIDERATION DENIED MARCH 25, 1993 

*Blasingame, Burch, Garrard & Bryant, Gary B. Blasingame, J. Ralph Beaird, Milton F. Eisenberg II*, for appellants (case no. A92A2057).

*Sullivan, Hall, Booth & Smith, Jack G. Slover, Jr., A. Spencer McManes, Jr.*, for appellant (case no. A92A2058).

*Long, Weinberg, Ansley & Wheeler, J. M. Hudgins IV, David A. Sapp, Glenn E. Kushel*, for appellant (case no. A92A2059).

*Harman, Owen, Saunders & Sweeney, H. Andrew Owen, Rolfe M. Martin, Robert J. Higdon, Jr.*, for appellant (case no. A92A2060).

*David W. Boone, Leigh M. Smith, Margaret A. McDermott, Richard T. Alexander, Jr., Dover & Sexton, Jonathan P. Sexton, Davis, Gregory & Christy, Hardy Gregory, Jr.*, for appellees.