**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

_DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES._

**June 29, 2020**

# In the Court of Appeals of Georgia

A20A0459. HOUSTON HOSPITALS, INC. v. REEVES et al.          DO-015

DOYLE, Presiding Judge.

Following the death of Alvin D. Blount, Jr., Amanda Reeves filed this medical malpractice claim as next of kin and executor of Blount's estate. Reeves alleged that Dr. Bilal Khan was negligent in performing a cardiac catheterization on Blount, which led to his death. In addition to asserting claims against Khan and Khan's employer, Middle Georgia Heart and Vascular Center, LLC, Reeves alleged a claim of negligent credentialing against Houston Hospitals, Inc., d/b/a Houston Medical Center ("HMC"). HMC filed a motion to dismiss, which the trial court denied after a hearing. The court, however, granted HMC a certificate of immediate review, and this Court granted HMC's application for interlocutory review. HMC appeals, arguing that the trial court erred by denying its motion to dismiss because an expert

affidavit was required to support the negligent credentialing claim at the time Reeves filed her claim. For the reasons that follow, we affirm.

Following Blount's death after a cardiac catheterization performed by Khan, Reeves filed suit and alleged that Khan performed the procedure negligently. Reeves attached the expert affidavit of Dr. Richard Konstance, who had experience in the area of interventional cardiology and cardiac catheterization. Reeves also alleged that HMC was negligent, not vicariously as the employer of Khan, but for credentialing Khan even though HMC knew "or should have known [that Khan] had not performed the requisite numbers of the procedure to be credentialed in that area of practice." Reeves alleged that Blount's injuries and death were proximately caused by HMC's failure to "perform a diligent inquiry of its physicians, including but not limited to [inquiring into] Khan's medical credentials, and [its] failure to exercise the degree of care, skill, and judgment that is exercised by comparable hospitals in approving an applicant's request for privileges . . . ." Konstance's expert affidavit did not opine on the issue of whether Khan should have been credentialed to perform the procedure at issue, and Reeves did not attach any other expert affidavits to the complaint.

HMC moved to dismiss the claims against it, arguing that Reeves's negligent credentialing claim was subject to the expert affidavit requirement of OCGA § 9-11-

9.1 (a), specifically as to the issue of credentialing or granting privileges, and was not supported by the expert affidavit filed by Reeves.

After a hearing on the matter, the trial court summarily denied HMC's motion to dismiss. After the trial court granted a certificate of immediate review, this appeal followed.

> Whether a complaint alleges ordinary negligence or professional malpractice is a question of law for this Court to decide. On appeal, we conduct a de novo review of a trial court's ruling on a motion to dismiss. In doing so, our role is to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with any and all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts; however, we need not adopt a party's legal conclusions based on these facts.[1]

HMC argues that the trial court erred by denying its motion to dismiss because Reeves was required to file with her complaint an expert affidavit specifically

---

[1] (Citations and punctuation omitted.) *Ambrose v. Saint Joseph's Hosp. of Atlanta, Inc.*, 325 Ga. App. 557 (754 SE2d 135) (2014), quoting *Dove v. Ty Cobb Healthcare Systems, Inc.*, 316 Ga. App. 7, 9 (729 SE2d 58) (2012), *Crisp Regional Nursing & Rehabilitation Center v. Johnson*, 258 Ga. App. 540, 542 (574 SE2d 650) (2002). Based on this standard of review, HMC's argument that the verbiage in Reeve's complaint "essentially concede[s]" that her claim required a separate affidavit is unpersuasive because we read the complaint in the light most favorable to Reeves.

supporting her negligent credentialing claim against HMC in addition to Konstance's affidavit addressing Khan's breach of the standard of care.

A hospital has a direct and independent responsibility to its patients to take reasonable steps to ensure that staff physicians using hospital facilities are qualified for privileges granted. It follows that a cause of action for negligent credentialing of staff physicians and other medical care providers is an independent cause of action that arises out of that responsibility.[2]

Based on this premise, this Court has explained that a negligent credentialing claim is not a derivative claim based on respondeat superior wherein the "employer and employee are regarded as a single tortfeasor."[3]

___

[2] (Citations and punctuation omitted.) *Ladner v. Northside Hosp., Inc.*, 314 Ga. App. 136, 138 n.4 (723 SE2d 450) (2012), quoting *Wellstar Health Systems v. Green*, 258 Ga. App. 86, 88 (1) (572 SE2d 731) (2002), *McCall v. Henry Med. Center*, 250 Ga. App. 679, 681 (1) (551 SE2d 739) (2001), citing *Madonna v. Satilla Health Svcs.*, 290 Ga. App. 148, 151 (658 SE2d 858) (2008).

[3] (Punctuation omitted.) *Hosp. Auth. of Valdosta/Lowndes County v. Fender*, 342 Ga. App. 13, 23 (2) (802 SE2d 346) (2017). Compare *Holmes v. Lyons*, 346 Ga. App. 99, 104 (1) (815 SE2d 252) (2018) (physical precedent only as to Division 2) (cert. granted but appeal withdrawn Jun. 10, 2019) (reinstating claim of negligent credentialing against the non-employer hospital, explaining that the negligent credentialing claim was "dependent on a legally sufficient claim of medical malpractice against a physician").

4

This Court has not addressed whether an expert affidavit regarding negligent credentialing on the part of a hospital is necessary in addition to the expert affidavit filed against an allegedly negligent defendant physician or other professional is required under OCGA § 9-11-9.1 (a).[4] This Code section states that

> [i]n any action for damages alleging professional malpractice against . . . [a]ny licensed health care facility *alleged to be liable based upon the action or inaction of a health care professional* licensed by the State of Georgia and *listed in subsection (g)* of this Code section[,[5]] the plaintiff

---

[4] Cf. *Bonner v. Peterson*, 301 Ga. App. 443, 445 (1) (687 SE2d 676) (2009) (claim that a non-employer medical doctor failed to properly supervise another physician called into question the doctor's professional judgment and was thus a professional negligence allegation requiring compliance with OCGA § 9-11-9.1). Compare *Adams v. Griffis*, 275 Ga. App. 364, 365 (2) (620 SE2d 575) (2005) (claims for negligent supervision and retention arose out of the doctor's substandard medical care for purposes of the statute of limitation).

[5] Subsection (g) states that
[t]he professions to which this Code section shall apply are: (1) Architects; (2) Attorneys at law; (3) Audiologists; (4) Certified public accountants; (5) Chiropractors; (6) Clinical social workers; (7) Dentists; (8) Dietitians; (9) Land surveyors; (10) Marriage and family therapists; (11) Medical doctors; (12) Nurses; (13) Occupational therapists; (14) Optometrists; (15) Osteopathic physicians; (16) Pharmacists; (17) Physical therapists; (18) Physicians' assistants; (19) Podiatrists; (20) Professional counselors; (21) Professional engineers; (22) Psychologists; (23) Radiological technicians; (24) Respiratory

5

[is] required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim.

As explained in *Legum v. Crouch*,[6] because HMC

is not classified as such a "professional," the affidavit requirement does not apply automatically as to any claim asserted against it. Rather, the affidavit requirement applies regarding tort claims filed against a hospital . . . when . . . grounded upon the additional averment of acts or omissions requiring the exercise of professional skill and judgment by agents or employees who themselves are recognized as "professionals" [listed in OCGA § 9-11-9.1 (g)].[7]

HMC contends that based on various statutes and regulations that assign peer review functions to the medical staff of a hospital, we should hold as a matter of law that credentialing is a medical question that calls into question the professional judgment of employees of the hospital. The record, however, does not establish at this stage of the proceedings which employees of the hospital were involved in

---

therapists; (25) Speech-language pathologists; or (26) Veterinarians.

[6] 208 Ga. App. 185 (430 SE2d 360) (1993).

[7] (Citations and punctuation omiteed.) Id. at 186-187 (1).

6

credentialing Khan.[8] Moreover, in other circumstances, the Supreme Court of Georgia has differentiated between work product generated by a hospital's peer review process and that of a hospital's "routine credentialing information."[9] Thus, we disagree with HMC that in *all circumstances* a negligent credentialing claim necessarily requires an expert affidavit especially in light of the allegations in the complaint that Khan simply did not have a sufficient number of prior surgeries to qualify for credentialing. Such a decision could have been made summarily by an administrator rather than a medical professional's judgment. Therefore, based on the record at this stage of the proceedings, we cannot agree that when HMC credentialed

---

[8] See OCGA § 31-7-15. See also Ga. Comp. R. & Regs., rr. 111-8-40-.02, 111-8-40-.11. See also *Cherokee Co. Hosp. Auth. v. Beaver*, 179 Ga. App. 200, 204 (345 SE2d 904) (1986) ("Medical questions may be defined as those concerning highly specialized expert knowledge with respect to which a layman can have no knowledge at all, and the court and jury must be dependent on expert evidence.") (citations and punctuation omitted.)

[9] See *Hosp. Auth. of Valdosta & Lowndes County v. Meeks*, 285 Ga. 521, 523-524 (678 SE2d 71) (2009) (holding that the Georgia peer review privilege does not extend to routine credentialing information that does not involve evaluation of the quality and efficiency of actual medical services).

Khan it did so via the medical judgment of a professional listed in OCGA § 9-11-9.1 (g).[10] Accordingly, we affirm the trial court's denial of HMC's motion to dismiss.

*Judgment affirmed. McFadden, C. J., and Hodges, J., concur.*

---

[10] See *Ambrose*, 325 Ga. App. at 559-560 (2), citing *Lamb v. Candler Gen. Hosp.*, 262 Ga. 70, 71 (1) (413 SE2d 720) (1992). See also *Zephaniah v. Ga. Clinic, P.C.*, 350 Ga. App. 408, 410-412 (1) (829 SE2d 448) (2019) (complaint *may* state claims that did not require an expert affidavit, and therefore, it was error to dismiss the complaint). Cf. *Fulton-DeKalb Hosp. Auth. v. Dawson*, 270 Ga. 376, 379-380 (2) (509 SE2d 28) (1998) (act that is purely administrative in nature rather than an act of peer-reviewed professional judgment is not protected under peer review statutes and regulations); *Jones v. Bates*, 261 Ga. 240, 242 (2) n.4 (403 SE2d 804) (1991) ("[f]rom these pleadings, we cannot say that the claim" required the exercise of expert medical judgment).