**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR JUDGE FULLER**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**October 2, 2023**

# In the Court of Appeals of Georgia

A23A0631. LEGGAT et al. v. NAVICENT HEALTH, INC. et al.

FULLER, Senior Judge.

In this medical malpractice and wrongful death action, plaintiffs Autumn Leggat and Brandon Knight, as next friends and administrators of the estate of Cali-Ann Knight, appeal from the grant of summary judgment to defendant-appellees Navicent Health, Inc.; Richard Cartie, M.D.; Albright Gayagoy, M.D.; John Souza, M.D.; and Jacob Kirkpatrick, M.D.[1] They raise several challenges to the trial court's application of OCGA § 9-11-9.1, the statute requiring expert affidavits in malpractice

---

[1] James Thigpen, M.D., who initially was named as a defendant, was dismissed from the case in June 2021. The trial court granted summary judgment to another defendant, Navicent Health Baldwin, Inc., on different grounds in a separate order not at issue in this appeal. As a result, neither defendant is a party to this appeal.

cases. Because we conclude that the statute required the trial court to dismiss the plaintiffs' complaint due to their untimely filed expert affidavit, we affirm.

The plaintiffs' claims for medical malpractice and wrongful death arise out of the treatment of their minor daughter Cali-Ann at Navicent facilities by the defendant doctors on March 30 and 31, 2019, and Cali-Ann's subsequent death on April 14, 2019. Before this suit began,

> [o]n March 14, 2020, pursuant to OCGA § 38-3-62 and citing the public health emergency presented by the COVID-19 pandemic, Supreme Court of Georgia Chief Justice Harold Melton issued an order declaring a statewide judicial emergency. Among other things, the judicial emergency declaration suspended, tolled, extended and otherwise granted relief from any deadlines or time schedules in civil and criminal cases. The order was set to expire on April 13, 2020, but was extended several times . . . .

*Copeland v. Copeland*, 361 Ga. App. 125, 127, n. 3 (863 SE2d 509) (2021); see Order Declaring Statewide Judicial Emergency (Mar. 14, 2020), available at https://www.gasupreme.us/wp-content/uploads/2020/03/CJ-Melton-amended-Statewide-Jud-Emergency-order.pdf. The Chief Justice subsequently issued an order reimposing deadlines on litigants effective July 14, 2020. See Fourth Order Extending

Declaration of Statewide Judicial Emergency (July 10, 2020), available at https://www.gasupreme.us/wp-content/uploads/2020/07/4th-SJEO-FINAL.pdf.

The plaintiffs filed their initial complaint against all defendants except Dr. Kirkpatrick on March 28, 2021. No expert affidavit was filed at that time. See generally OCGA § 9-11-9.1. The plaintiffs filed an amended complaint adding Dr. Kirkpatrick as a defendant — again without an expert affidavit — on April 2, 2021. They subsequently filed an expert affidavit on May 11, 2021.

The defendant-appellees moved for summary judgment, arguing that the plaintiffs failed to comply with the expert affidavit requirements of OCGA § 9-11-9.1 (b). Following a hearing, the trial court granted the motion, concluding that: (i) the plaintiffs retained their counsel more than 90 days before the applicable statute of limitation expired; and (ii) as a result, their failure to include an expert affidavit with their initial complaint mandated its dismissal under OCGA § 9-11-9.1 (b). This appeal followed.

1. The plaintiffs first contend that the trial court erred in finding that they failed to comply with OCGA § 9-11-9.1 because, they argue, they reasonably believed that the two-year statute of limitation on their claims was set to expire less than ten days after they retained counsel, and, as a result, they were not required to file an expert

3

affidavit with their complaint and instead had an additional 45 days to do so under the statute. This contention lacks merit.

Our review of the trial court's ruling involves the construction of OCGA § 9-11-9.1, which is a legal issue that we address de novo. See *Hill v. First Atlantic Bank*, 323 Ga. App. 731, 732 (747 SE2d 892) (2013). Where, as here, a complaint seeks damages for professional negligence, OCGA § 9-11-9.1 (a) requires the plaintiff "to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." Subsection (b) of the statute, however, sets forth an exception to that requirement:

> The contemporaneous affidavit filing requirement pursuant to subsection (a) of this Code section shall not apply to any case in which the period of limitation will expire or there is a good faith basis to believe it will expire on any claim stated in the complaint within ten days of the date of filing the complaint and, because of time constraints, the plaintiff has alleged that an affidavit of an expert could not be prepared. In such cases, if the attorney for the plaintiff files with the complaint an affidavit in which the attorney swears or affirms that his or her law firm was not retained by the plaintiff more than 90 days prior to the expiration of the period of limitation on the plaintiff's claim or claims, the plaintiff shall have 45 days after the filing of the complaint to supplement the pleadings with the affidavit. . . . If either affidavit is

4

not filed within the periods specified in this Code section, or it is determined that the law firm of the attorney who filed the affidavit permitted in lieu of the contemporaneous filing of an expert affidavit or any attorney who appears on the pleadings was retained by the plaintiff more than 90 days prior to the expiration of the period of limitation, the complaint shall be dismissed for failure to state a claim.

OCGA § 9-11-9.1 (b). Notably, the statute's 90-day provision contains no exception for a good faith belief that the statute of limitation was about to expire.

The statute of limitation for medical malpractice claims, including those for wrongful death, is two years from "the date on which an injury or death arising from a negligent or wrongful act or omission occurred." OCGA § 9-3-71 (a); see *Legum v. Crouch*, 208 Ga. App. 185, 187 (2) (430 SE2d 360) (1993) (OCGA § 9-3-71 applies to wrongful death claims based on medical malpractice). Consequently, the two-year period in which to file suit began to run no earlier than March 30 and 31, 2019, for the plaintiffs' malpractice claims, and on April 14, 2019, for their wrongful death claims.[2] And when the Chief Justice suspended filing deadlines on March 14, 2020, at least one year and 16-17 days remained in which to file the malpractice

---

[2] We say "no earlier than" because the date on which Cali-Ann first suffered an injury attributable to the defendants' negligence may be debatable on the current record. The statute of limitation on all claims began to run no later than April 14, 2019, the day she died. See OCGA § 9-3-71 (a).

claims, and one year and 31 days remained in which to file the wrongful death claims. Those deadlines remained tolled until the limitation periods resumed running when the Chief Justice reimposed the deadlines on July 14, 2020. As a result, the statute of limitation for the plaintiffs' malpractice claims expired no earlier than July 30 and 31, 2021 (one year and 16-17 days later), and the limitation period for their wrongful death claims expired on August 14, 2021 (one year and 31 days later).

The plaintiffs retained their counsel no later than March 27, 2021. At that time, the statute of limitation on their claims was set to expire no earlier than 125-126 days later on their malpractice claims, and approximately two weeks thereafter on their wrongful death claims. Nevertheless, plaintiffs' counsel filed an affidavit with their March 28, 2021 complaint purporting to rely on the OCGA § 9-11-9.1 (b) safe harbor provision as a basis for filing a late expert affidavit on the ground that the statute of limitation was set to expire on March 29, 2021. But because more than 90 days remained in the limitation period, the plaintiffs were not entitled to rely on the safe harbor provision, and the trial court was required to dismiss the complaint under the plain language of the statute. See OCGA § 9-11-9.1 (b).

The plaintiffs, however, maintain that it was unclear whether the Chief Justice's suspension of filing deadlines "move[d] the date of the statute of

limitations" or "merely grant[ed] relief from the deadline." As a result, they argue, they "reasonably relied on the plain language" of OCGA § 9-3-71 to conclude that the limitation periods expired between the end of March and April 14, 2021. And they further contend that the trial court improperly ignored plaintiffs' counsel's "good faith belief" that the statute of limitation was about to expire and instead dismissed their complaint by applying OCGA § 9-11-9.1 (b)'s 90-day provision "in a vacuum."

Even assuming that counsel believed in good faith that the statute of limitation was about to expire, any such belief was wrong, and OCGA § 9-11-9.1 (b)'s 90-day provision required the trial court to dismiss their complaint. In that regard, the Chief Justice's March 14, 2020 order provided as follows:

> Pursuant to OCGA § 38-3-62, during the period of this Order, the undersigned hereby suspends, tolls, extends, and otherwise grants relief from any deadlines or other time schedules or filing requirements imposed by otherwise applicable statutes, rules, regulations, or court orders, whether in civil or criminal cases or administrative matters, including, but not limited to any: (1) statute of limitation . . . .

Order Declaring Statewide Judicial Emergency at 2. That language clearly tolled the running of the statute of limitation in this case. This conclusion is further supported

by a separate document providing guidance specific to statutes of limitation issued by the Supreme Court of Georgia approximately three weeks later:

> Simply put, the tolling of a statute of limitation suspends the running of the period of limitation, but it does not reset the period of limitation. If the period of limitation for a particular cause of action commenced prior to March 14, 2020 — that is, if the "clock" had started to run before the entry of the Chief Justice's [March 14] order — the running of the period of limitation was suspended on March 14, and the running of the period will resume when the tolling provision of the March 14 declaration has expired or is otherwise terminated.

Guidance on Tolling Statutes of Limitation Under the Chief Justice's Order Declaring Statewide Judicial Emergency (Ga. Sup. Ct. Apr. 6, 2020), available at https://www.gasupreme.us/wp-content/uploads/2020/04/Guidance-for-Tolling-Statutes-of-Limitation-04_06_20.pdf. Finally, the Chief Justice's July 10, 2020 order provided:

> [T]his order hereby reimposes all deadlines and other time schedules and filing requirements (referred to collectively herein as "deadlines") that are imposed **on litigants** by statutes, rules, regulations, or court orders in civil and criminal cases and administrative actions and that have been suspended, tolled, extended, or otherwise relieved by the March 14, 2020 Order Declaring Statewide Judicial Emergency, as extended, on the following schedule and with the following exceptions and conditions:

8

. . .

> (10) *The 122 days between March 14 and July 14, 2020, or any portion of that period in which a statute of limitation would have run, shall be excluded from the calculation of that statute of limitation.*

Fourth Order Extending Declaration of Statewide Judicial Emergency at 3-5 (second emphasis supplied).

Read together, these provisions leave no doubt that the statute of limitation in this case expired no earlier than July 30, 2021, more than 90 days after the March 28, 2021 initial complaint was filed. The plaintiffs therefore were not entitled to rely on the OCGA § 9-11-9.1 (b) 45-day grace period for filing an expert affidavit. Cf. *Legum*, 208 Ga. App. at 187-189 (3) ("appellees were not entitled to invoke the 45-day delay provisions of OCGA § 9-11-9.1 (b), as the applicable statute of limitation" — which had been tolled by statute — "would not expire as to any of appellees' averred claims, within ten days of the date of filing of the complaint").[3] And any "good faith" that counsel may have had to the contrary did not relieve the

_____

[3] The version of OCGA § 9-11-9.1 (b) in effect when the complaint was filed in *Legum* did not contain the current 90-day provision and instead made the 45-day grace period applicable only where "the period of limitation will expire within ten days of the date of filing and, because of such time constraints, the plaintiff has alleged that an affidavit of an expert could not be prepared." OCGA § 9-11-9.1 (b) (1991); see *Legum*, 208 Ga. App. at 185 (decedent died and complaint filed in 1991).

9

plaintiffs from the mandatory requirement of OCGA § 9-11-9.1 (b): that the complaint "shall be dismissed" if, as here, plaintiffs' counsel was retained more than 90 days before the statute of limitation expired and no expert affidavit was filed with the complaint. See id. at 188 (3) ("[U]nless the context clearly indicates otherwise, the word 'shall' is to be read as a word of command.") (citation and punctuation omitted); see also *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (when considering the meaning of a statute, a court must "presume that the General Assembly meant what it said and said what it meant" and afford the statutory text its "plain and ordinary meaning") (citations and punctuation omitted). We therefore reject the plaintiffs' claim that the trial court erroneously dismissed their complaint under OCGA § 9-11-9.1 (b).

We also find unavailing the plaintiffs' assertion that interpreting the statute as the trial court did renders the safe harbor provision "meaningless." Viewed as a whole, the only logical reading of the statutory language is that the objective 90-day provision trumps any potential subjective belief that a statute of limitation is about to expire. See *Eagle West, LLC v. Ga. Dept. of Transp.*, 312 Ga. App. 882, 888 (720 SE2d 317) (2011) ("[P]articular words of statutes are not interpreted in isolation; instead, courts must construe a statute to give sensible and intelligent effect to all of

10

its provisions, and must consider the statute in relation to other statutes of which it is part.") (citation and punctuation omitted). Indeed, reading the statute as the plaintiffs do would render the 90-day requirement meaningless any time a party claims a good faith belief in the imminent expiration of the statute of limitation — an illogical result under the statutory language.

Finally, the plaintiffs cite no on-point authority in support of their passing, conclusory suggestion that dismissal is not authorized because the defendants allegedly were in default when they did not answer the plaintiffs' initial complaint within 30 days.[4] To the contrary, because the plaintiffs sought to rely on the 45-day grace period in OCGA § 9-11-9.1 (b), the defendants were not required to file answers "until 30 days after the filing of the affidavit of an expert." OCGA § 9-11-9.1 (d); see *McGarr v. Gilmore*, 220 Ga. App. 286, 287 (469 SE2d 720) (1996) (the statutory provision delaying the deadline to answer until 30 days after an expert affidavit is filed is "*automatically activated*" when a plaintiff invokes the 45-day grace period, because "[i]t is what is in the complaint, not what is alleged or proved

---

[4] Neither of the decisions the plaintiffs cite on this issue — *Troika Entertainment v. Mendez*, 360 Ga. App. 904 (862 SE2d 572) (2021), and *Ward v. Marriott Intl.*, 352 Ga. App. 488 (835 SE2d 322) (2019), involved malpractice claims, expert affidavits, or OCGA § 9-11-9.1.

11

afterwards, that governs whether the extension for the answer [under OCGA § 9-11-9.1] is afforded to defendants") (emphasis supplied). Reading the statute otherwise would render the 90-day requirement meaningless any time a defendant reasonably relied on OCGA § 9-11-9.1 (d).[5] See *McGarr*, 220 Ga. App. at 288 ("A plaintiff cannot sabotage a defendant by invoking an extension for himself and then, after defendant relies on his correlative extension, say the latter did not apply because plaintiff did not need an extension as to this defendant.").

2. The plaintiffs further contend that the defendants also must have believed that the statute of limitation was set to expire in March and April 2021 because they

---

[5] The parties have not cited, and research has not revealed, any Georgia appellate decisions addressing the specific questions presented in this case. Nevertheless, the result in this appeal follows from the plain language of OCGA § 9-11-9.1 (b). See *Deal*, 294 Ga. at 172 (1) (a); *Legum*, 208 Ga. App. at 188 (3). We recognize that the General Assembly may not have contemplated the result following from the peculiar facts of this case, in which the plaintiffs have defaulted on their claims by filing a complaint without an expert affidavit several months before the deadline for doing so (albeit under the mistaken belief that the deadline was much closer). But given the clear statutory language, changing that result is a policy question for the General Assembly to address. See, e.g., *Priester v. State*, 309 Ga. 330, 334 (3) (845 SE2d 683) (2020) (appellate courts generally must defer to the General Assembly on questions of public policy); *Deal*, 294 Ga. at 174 (1) (a), n. 11 ("[S]triking the right balance between competing legitimate policy interests is a political question, and [an appellate court] is concerned only with legal questions. As members of this State's judicial branch, it is [an appellate court's] duty to interpret the laws as they are written.") (citation and punctuation omitted).

12

did not answer the complaint until after the expert affidavit was filed[6] and did not move to dismiss the complaint for failure to include the affidavit. But the defendants' subjective beliefs — whatever they may have been — do not change the fact that OCGA § 9-11-9.1 (b) objectively required dismissal of the complaint under the facts of this case. The plaintiffs also appear to suggest that the defendants waived the right to seek dismissal under OCGA § 9-11-9.1 (b) by failing to raise an affirmative defense specifically targeting the applicability of the 45-day grace period. But each defendant's answer asserted as an affirmative defense the plaintiffs' failure to comply with OCGA § 9-11-9.1. And the plaintiffs have identified no legal authority requiring more specificity from the defendants in this case.[7] See *Colclough v. Dept. of Human Svcs.*, 367 Ga. App. 567, 570 (1) (887 SE2d 407) (2023) ("It is the appellant's burden,

---

[6] As alluded to above, under OCGA § 9-11-9.1 (d), "If a complaint alleging professional malpractice is filed without the contemporaneous filing of an affidavit as permitted by subsection (b) of [the statute], the defendant shall not be required to file an answer to the complaint until 30 days after the filing of the affidavit of an expert . . . ."

[7] *Frieson v. South Fulton Med. Center*, 255 Ga. App. 217 (564 SE2d 821) (2002), cited by the plaintiffs, concerned a prior version of the expert affidavit statute — which, unlike the current statute, required a defendant affirmatively to "allege[ ], by motion to dismiss filed contemporaneously with its initial responsive pleading[,] that the plaintiff has failed to file the requisite affidavit," OCGA § 9-11-9.1 (b) (2002) — that does not apply here. See *Frieson*, 255 Ga. App. at 218 (3); compare OCGA § 9-11-9.1 (b) (2021), with OCGA § 9-11-9.1 (b) (2002).

as the party challenging the ruling below, to affirmatively show error from the record on appeal.") (citation and punctuation omitted).

3. The plaintiffs also contend that the defendants' summary judgment motion was premised on speculation that the plaintiffs retained counsel while Cali-Ann was still hospitalized, two years before filing suit. But we need not address this issue, as it did not form the basis for the trial court's summary judgment ruling and does not affect our conclusion that the plaintiffs were not entitled to rely on OCGA § 9-11-9.1 (b), even if they did not retain counsel until late March 2021. See *Amica v. State*, 307 Ga. App. 276, 282 (2) (704 SE2d 831) (2010) ("This Court is an appellate court for the correction of errors of law made by the trial court, which have as their bases specific rulings made by the trial court.") (citation and punctuation omitted).

4. Finally, we deem abandoned the plaintiffs' passing, conclusory assertion in the final paragraph of their brief that the trial court erroneously granted summary judgment "without affording the parties notice and an opportunity to brief the issues," which they do not support with legal authority. See *Brittain v. State*, 329 Ga. App. 689, 704 (4) (a) (766 SE2d 106) (2014) ("[A]n appellant must support enumerations of error with argument and citation of authority, and mere conclusory statements are not the type of meaningful argument contemplated by our rules.") (citation and

14

punctuation omitted); see also Court of Appeals Rule 25 (d) (1); *Colclough*, 367 Ga. App. at 570 (1). Regardless, each party filed summary judgment briefs, the plaintiffs had an opportunity to address the trial court's stated concern that the OCGA § 9-11-9.1 (b) 45-day grace period did not apply in this case because the statute of limitation expired no earlier than late July 2021, and the plaintiffs do not identify what arguments they would have raised if additional briefing had been allowed.

*Judgment affirmed. Doyle, P. J., and Gobeil, J., concur*.